**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BRENDA KAKALETRIS,
Plaintiff

v.

JUSTIN HOUGH, *et al.*,
Defendants

No. 25 CV 15148

Judge Jeremy C. Daniel

**ORDER**

Defendant Zeeshan Iqbal's motion to dismiss [45] is granted in part and denied in part. Specifically, it is granted as to Count I and denied as to Count II. Defendant Twin Manors Condominium Association's motion to dismiss [46] is granted. Defendant Iqbal shall answer the operative complaint on or before August 21, 2026. The August 5, 2026, motion hearing is stricken.

**STATEMENT**

**<u>Background and Legal Standard</u>**

The following description of events underlying these claims is drawn from the complaint and presumed true for the purpose of resolving this motion. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Plaintiff Brenda Kakaletris was employed as a newspaper delivery driver for the Chicago Tribune and delivered newspapers to 7730 Dempster Street, Morton Grove, Illinois, for approximately fifteen years. (R. 1 ¶ 8.)[1] On August 18, 2023, Defendant Zeeshan Iqbal, president of Defendant Twin Manors Condominium Association ("Twin Manors"), reported to the Morton Grove Police Department that his and four other residents' vehicles had been keyed. (*Id.* ¶ 9.) Iqbal provided the Morton Grove Police Department with security footage from the building, which the plaintiff alleges shows her walking past Iqbal's vehicle, delivering the newspaper, and returning to her vehicle without keying the vehicle. (*Id.* ¶¶ 10–12.) Defendant Detective Justin Hough wrote in a police report regarding the incident that the officer who reviewed the security footage was "unable to determine if [the plaintiff] made contact with the victim's vehicle resulting in the reported damage." (*Id.* ¶ 14.) Detective Hough arrested the plaintiff on August 31,

---

[1] For ECF filings, the Court cites to the page number(s) in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

2023, and she was charged with criminal damage to property. (*Id.* ¶¶ 15–16.) On July 1, 2025, the plaintiff was found not guilty. (*Id.* ¶ 17.)

The plaintiff now brings claims against Hough, Village of Morton Grove, Iqbal, and Twin Manors for malicious prosecution under § 1983 of the Civil Rights Act of 1871 (Hough and Iqbal only) and Illinois law (all defendants). *See* 42 U.S.C. § 1983. Iqbal and Twin Manors move to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

A Rule 12(b)(6) motion tests whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face" and has raised a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal is proper where "the allegations . . . , however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## Analysis

### Iqbal's Motion to Dismiss

To state a claim for malicious prosecution under § 1983, a plaintiff must allege that:

> (i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in the acquittal or discharge of the accused.

*Neita v. City of Chicago*, 148 F.4d 916, 939 (7th Cir. 2025). Because a federal malicious prosecution claim is housed under the Fourth Amendment, *Thompson v. Clark*, 596 U.S. 36 (2022), the defendant in any such action must be a state actor.

Iqbal first argues that the plaintiff fails to state a claim for federal malicious prosecution because he is not a state actor. (R. 45 at 3–6.) It is true that the complaint does not allege that Iqbal is a state actor. But private actors may be considered state actors under § 1983 if they "'had a meeting of the minds and thus reached an understanding' with a state actor to deny [a plaintiff] a constitutional right." *Wilson v. Warren County, Illinois*, 830 F.3d 464, 468 (7th Cir. 2016). Here, beyond conclusory allegations of conspiracy between Iqbal and the Morton Grove Police Department, the complaint alleges that Iqbal provided officers with security footage allegedly showing the plaintiff near his vehicle. (R. 1 ¶¶ 10, 24, 25, 32.) This allegation is not sufficient

2

to show that Iqbal had a meeting of the minds with the officer to violate the plaintiff's constitutional rights. *Proffitt v. Ridgway*, 279 F.3d 503, 508 (7th Cir. 2002) ("A private citizen does not become a policeman by complaining to a policeman[.]"). Thus, the Court dismisses Count I as to Iqbal.

"The elements for an Illinois state-law malicious prosecution claim mirror [the] federal requirements," with a state law claim requiring a showing of favorable termination indicative of innocence. *Lee v. Harris*, 127 F.4th 666, 676 (7th Cir. 2025) (citing *Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018)); *Swick v. Liataud*, 662 N.E.2d 1238, 1242–43 (Ill. 1996).

Iqbal argues that the plaintiff fails to demonstrate the elements of commencement of proceeding, lack of probable cause, or malice. (R. 45 at 6–7.) A private actor is responsible for the commencement of a proceeding when they "knowingly give[] false information to a police officer, who then swears out a complaint." *Randall v. Lemke*, 726 N.E.2d 183, 185 (Ill. App. 2000). The complaint states that the security footage that Iqbal provided to the police "do[es] not show [the plaintiff] keying any vehicle whatsoever, nor do[es it] show that [the plaintiff] even had keys in her hands." (R. 1 ¶ 12.) While it is close to the line, it is plausible when taking all facts in the plaintiff's favor, that Iqbal, with this footage that does not show the plaintiff keying his car, knowingly provided false information to the police department.

This finding also shows that the plaintiff has adequately pled that Iqbal did not have probable cause to initiate the proceeding, as probable cause is defined as "a state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. 2000). Knowingly providing false information to police, viewed in the light most favorable to the plaintiff, indicates that there could not have been an "honest and strong" suspicion of the plaintiff committing the crime. And because Iqbal could not have had that suspicion, it is plausible that he acted with malice, or "initiation of a prosecution for any reason other than to bring a party to justice." *Id.*

Thus, along with the termination of the proceeding in a manner indicative of the plaintiff's innocence—her non-guilty verdict, (R. 1 ¶ 17,)—and allegations of damages resulting from the prosecution, (*id.* ¶¶ 18, 20,) the Court finds that the plaintiff has adequately pled that Iqbal maliciously prosecuted her under Illinois law and denies Iqbal's motion to dismiss as to Count II.

**Twin Manors' Motion to Dismiss**

Twin Manors argues that Count II must be dismissed against it because it is neither liable under the doctrine of *respondeat superior*, nor has it engaged in any conduct supporting an independent claim of malicious prosecution. (*See generally* R. 46.)

An employer is vicariously liable under *respondeat superior* for the torts of an employee acting within the scope of their employment. *Papadakis v. Fitness 19 IL 116, LLC*, 148 N.E.3d 648, 652 (Ill. App. 2018). To allege *respondeat superior liability*, a plaintiff must plead that "(1) an employer/employee relationship existed, (2) the principal controlled or had the right to control the employee's conduct, and (3) the employee's conduct fell within the scope of the agency or employment." *Id.*

The plaintiff fails to show any of the aforementioned elements. The only allegation related to Twin Manors is that it "is liable pursuant to the doctrine of *respondeat superior* for the actions of Defendant Iqbal." (R. 1 ¶ 38.) Nowhere does the complaint state that Twin Manors is Iqbal's employer, that Iqbal undertook his actions at the behest of or in the scope of his association with Twin Manors, or that Twin Manors controlled Iqbal's conduct. The Court accordingly grants Twin Manors' motion to dismiss.

Date: 7/31/2026

JEREMY C. DANIEL
United States District Judge

4